**MENDELSOHN v. DULLES, Secretary of State.**

**No. 11370.**

United States Court of Appeals District of Columbia Circuit.

Argued April 7, 1953.

Decided Aug. 6, 1953.

Messrs. Jack Wasserman and Sanford H. Bolz, Washington, D. C., for appellant.

Mr. Howard Adler, Jr., Chicago, Ill., of the Bar of the Supreme Court of Illinois, pro hac vice, by special leave of Court, with whom Messrs. Charles M. Irelan, U. S. Atty. at time of argument, and William R. Glendon, Asst. U. S. Atty. at time of argument, Washington, D. C., were on the brief, for appellee.

Mr. Joseph M. Howard, Asst. U. S. Atty. at time record was filed, Washington, D. C., and William E. Kirk, Jr., Asst. U. S. Atty. at time brief was filed, Washington, D. C., also entered appearances for appellee.

Mr. Leo A. Rover, U. S. Atty., Washington, D. C., also entered an appearance for appellee.

Before EDGERTON, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

Morris Mendelsohn sued under § 503 of the Nationality Act of 1940 [1] to be de-

---

[1] 54 Stat. 1171, 8 U.S.C.A. § 903. The Act of 1940 was repealed and superseded by the Immigration and Nationality Act of 1952, 66 Stat. 163, 8 U.S.C.A. § 1101

clared a national of the United States. His complaint was dismissed by the District Court as failing to state a claim upon which relief could be granted. The question presented by this appeal is, of course, whether the complaint stated a cause of action.

Its allegations may be quickly summarized. Mendelsohn was born in Poland in 1914. At the age of six years he entered the United States in the care of his father and became a citizen through the father's naturalization in June, 1923. He remained here until 1936, when he went to Palestine where he has since resided.

When Italy entered the second World War in 1940, the American Consul General in Jerusalem requested all American citizens to leave Palestine on or before October 1, 1941. Appellant desired to leave for America before that time but was financially unable to buy passage for his alien wife, his daughter and himself. He tried unsuccessfully to borrow passage money from funds appropriated by Congress for such purposes.[2] Because of the war, ocean transportation obviously became increasingly difficult, if not impossible, to obtain; anyway, appellant continued for several years to be without money to pay for passage, had it been available.

Throughout 1946, when for the first time he had sufficient funds and transportation was available, Mendelsohn was prevented from making the trip to America "by the severe illness of his wife, which confined her to her bed under the constant supervision of her physician during 1946." The State Department notified Mendelsohn he had lost his nationality as of October 14, 1946. His passport was cancelled. Such are the facts alleged as the basis of this suit.

The pertinent statute is § 404 of the Nationality Act of 1940, 8 U.S.C.A. § 804, which in part reads:

"A person who has become a national by naturalization shall lose his nationality by:

*   *   *   *   *   *

"(c) Residing continuously for five years in any other foreign state,[3] except as provided in section 406 hereof   *   *   *."

It should be noted that by an act of 1945,[4] Congress declared probably in recognition of the difficulty of civilian travel in time of war, that nationality should not be lost under § 404(c) of the 1940 Act prior to October 14, 1946.

In support of the order appealed from, the Secretary of State reasons thus: (a) Mendelsohn resided in Palestine continuously for more than five years and until after October 14, 1946, without returning to this country; (b) he does not claim to have been, and was not, within any of the exceptions to the five-year forfeiture provision which are enumerated in § 406; (c) therefore, Mendelsohn lost his nationality on October 14, 1946, under § 404(c).

The Secretary concedes, however, that § 404(c) "was aimed at a voluntary expatriation," as Chief Justice Hughes said of an earlier similar statute in Perkins v. Elg.[5] There need be no ex-

---

et seq., but nevertheless its provisions govern the present case which arose while it was in effect. Cf. § 405 of the new Act.

2. Department of State Appropriations 1941, for fiscal year ending June 30, 1951, 54 Stat. 181, 187:
"Whenever the President shall find that a state of emergency exists endangering the lives of American citizens in any foreign country, he may make available for expenditure for the protection of such citizens   *   *   * not to exceed

$500,000 from various appropriations contained herein   *   *   *."

3. That is, a foreign state other than that of which he was formerly a national or in which the place of his birth is situated.

4. 59 Stat. 544.

5. 1939, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320. This opinion has become something of a landmark. At page 334 of 307 U.S., at page 889 of 59 S.Ct., the Chief Justice said, "Expatriation is the voluntary renunciation or abandonment of nationality and allegiance."

plicit renunciation of nationality, but the act which by statute results in loss of nationality must have been voluntarily done; if it was not, nationality is not lost because of it. That being true, the Secretary of State correctly states the question in this case to be

"* * * whether the illness of appellant's wife rendered involuntary his continued residence in Palestine after the end of the European war, when transportation was available, and when, by his own admission, he had funds with which to purchase passage."

At the outset, appellee states, and we agree, that on October 14, 1946, there was no statute expressly permitting a naturalized husband to remain abroad, on account of the illness of his alien wife, for a period longer than that fixed by § 404(c) without loss of nationality under that section. We regard the absence of such a statutory provision as immaterial; for, since absence must have been voluntarily prolonged too far in order for the five-year-forfeiture section to become operative, the question remains as first stated by the Secretary of State: whether the severe illness of appellant's wife during 1946 rendered involuntary his failure to return here before October 14 of that year. If it did, Mendelsohn did not lose his nationality under § 404(c) by remaining with his stricken wife.

We quote the appellee's answer to that question:

"* * * Although it might have been difficult and unpleasant for appellant to leave his wife in her time of illness, he nevertheless had a choice, and the election to remain in Palestine even though it meant endangering his American citizenship was consciously made, was, in short, an act proceeding from appellant's will."

The Secretary thus presses upon us the adoption of a Spartan standard by which to determine whether the appellant acted voluntarily. He says Mendelsohn could have embarked for America, turning away from the sickbed and leaving his wife to the care of others while he traveled thousands of miles to retain his nationality. It was indeed physically possible, and the appellant could have done it if he could have overcome those natural impulses which imperatively require a husband's continued presence with his wife who lies seriously ill. The Secretary's argument disregards the duress of devotion. Mendelsohn acted, it seems to us, under the coercion of marital affection, which was just as compelling as physical restraint.[6]

The appellee insists, however, that even though appellant's absence beyond the critical date be regarded as involuntary and so not within § 404(c) standing alone, Congress has elsewhere provided that nationality is lost in such circumstances unless the ailing wife is an American citizen. This is said to be the effect of § 406(c) and (e), 8 U.S. C.A. § 806(c) and (e), which are as follows:

"Subsections (b) and (c) of section 404 shall have no application to a person:

* * * * * *

"(c) Who is residing abroad on account of ill health;

* * * * * *

"(e) Who is the wife, husband, or child under twenty-one years of age of, and is residing abroad for the purpose of being with, an American citizen spouse or parent who is residing abroad for one of the objects or causes specified in section 405 or subsections (a), (b), (c), or (d) hereof; * * *."

By this enactment, appellee argues, Congress said a naturalized husband whose wife becomes seriously ill while

**6.** Ryckman v. Acheson, D.C.S.D.Tex.1952, 106 F.Supp. 739; Kasumi Nakashima v. Acheson, D.C.S.D.Cal.1951, 98 F.Supp. 11; Schioler v. United States, D.C.N.D. Ill.1948, 75 F.Supp. 353.

they are residing in a foreign state, may remain with her beyond the cut-off date of § 404(c) without losing nationality, if she is an American citizen; thus implying that he may not do so if she is an alien. We think the argument mistakes the nature of § 404(c), and the purpose of the two subsections of § 406 just quoted, and mistakes as well the relation between those provisions.

■ Section 404(c), interpreted under the Elg opinion, brands voluntary foreign residence for five years as voluntary expatriation, but promises that § 406 will enumerate exceptions to its sweeping generality. The subsequent section does just that. It provides that § 404(c) shall not apply to a person residing abroad for any of the listed reasons, none of which implies involuntary prolongation of the foreign residence.

In other words, as prolonged foreign residence which was clearly involuntary could not destroy nationality under § 404(c), Congress knew there was no need to except from the scope of that section one who was forced by circumstances to remain too long in a foreign country, and consequently limited § 406 to a list of situations in which foreign residence voluntarily undertaken should not result in loss of nationality.

■ Moreover, the language of the two subsections of § 406, which we have quoted above, does not indicate applicability to a situation where a naturalized husband and his American wife were living in a foreign state for some reason other than the ill health of either, and the wife became so seriously ill that her husband was duty bound to stay with her longer than the statute permits. Section 406(c) speaks of one who is "residing abroad on account of ill health" but does not require that the

ill health be such as to prevent travel to the United States. It applies, therefore, when an American couple have voluntarily taken up foreign residence on account of the ill health of one of them, —perhaps in search of an agreeable climate, beneficial waters, or specialized treatment not available here. It is not conditioned upon illness so disabling as to prevent travel. Appellant's case is pitched, correctly, we think, on the involuntary nature of his absence, which takes it out of the effect of § 404(c), the section which forfeits nationality for voluntary foreign residence.

The appellee advances another argument in support of his construction of § 406(e) as providing that, unless a wife who becomes seriously ill while residing abroad is an American citizen, her naturalized husband cannot remain with her longer than the period permitted by § 404(c), without losing nationality. He suggests that § 353(5) (b) of the Immigration and Nationality Act, approved June 27, 1952,[7] eliminates what he regards as the former requirement that the sick wife be an American citizen, and thereby tends to show it had formerly been so required.

Subsection (5) of § 353 of the 1952 Act, standing alone, does afford its exception regardless of the ailing wife's nationality. But subsection (7) provides that the five-year-forfeiture section shall not apply to a national who

"(7) is the spouse or child of an American citizen, and who has his residence abroad for the purpose of being with his American citizen spouse or parent who has his residence abroad for one of the objects or causes specified in paragraph (1), (2), (3), (4), (5) or (6) of this section, or paragraph (2) of section 354 of this title; * * *."

---

7. 66 Stat. at page 270, 8 U.S.C.A. § 1485 (5). The pertinent part of the provision is:

"Sec. 353. Section 352 (a) [the three- and five-year-forfeiture provision] shall have no application to a national who—
   *    *    *    *    *

"(5) has his residence abroad and is prevented from returning to the United States exclusively * * * (B) by the ill health of his parent, spouse, or child who cannot be brought to the United States, whose condition requires his personal care and attendance * * *."

Subsections (5) and (7) must, of course, be read together; when this is done, it seems plain that the latter restricts the application of the former to situations in which the ailing spouse or parent is an American citizen.

We are not concerned with those subsections of the new Act, which have no retroactive effect. They shed no light upon the meaning of § 406(c) and (e) of the 1940 Act, which are quite different in language and purpose and which we have already construed in a manner contrary to that contended for by the appellee.

Mendelsohn stated a cause of action. He is entitled to his day in court and to a certificate of identity under § 503 of the Act to enable him to come here to conduct his case.

Reversed and remanded.