Lillian Hisako SATO and Blanche Masako Sato, Plaintiffs,

v.

John Foster DULLES, Secretary of State of the United States, Defendant.

Civ. No. 1519.

United States District Court
D. Hawaii.

Sept. 22, 1958.

Brahan Houston, Honolulu, Hawaii, for plaintiffs.

Louis B. Blissard, U. S. Atty., Honolulu, Hawaii, for defendant.

WIIG, District Judge.

By their amended complaint plaintiffs pray for a judgment declaring that they are nationals of the United States, and that they did not lose their United States citizenship by reason of having voted in elections held in Japan. They allege the Court has jurisdiction by virtue of Section 503 of the Nationality Act of 1940, 54 Stat. 1171, 8 U.S.C.A. § 903, and Section 405(a) of the Immigration and Nationality Act of 1952, 66 Stat. 280, note to 8 U.S.C.A. § 1101.

Defendant has moved to dismiss on the ground that the Court lacks jurisdiction of the subject matter.

This original complaint was filed on November 20, 1956. The pertinent allegations of the amended complaint filed June 5, 1958, are:

That plaintiff, Lillian Hisako Sato, was born in the Territory of Hawaii on August 22, 1928, and plaintiff, Blanche Masako Sato, was born in the Territory of Hawaii on September 24, 1917; that their parents were Japanese nationals and that, consequently, plaintiffs are citizens of the United States by birth and citizens of Japan by descent; that in 1940 their parents took them from Hawaii to Japan for a visit and that they desired to return to Hawaii as soon after the war as transportation was available, but were unable, until 1955, to defray the expense of returning; that on November 22, 1955, plaintiff, Lillian, and on March 7, 1956, plaintiff, Blanche, applied to the American Consul in Fukuoka, Japan, for registration or a passport to return to Hawaii; that in response to said applications, the American Consul executed a Certificate of Loss of the Nationality of the United States as to plaintiff, Lillian, on April 30, 1956, and as to plaintiff, Blanche, on August 1, 1956; both of which the State Department thereafter approved; that notice thereof was communicated to plaintiff, Lillian, on September 24, 1956, and to plaintiff, Blanche, on November 16, 1956; that the Certificate as to plaintiff Lillian was based on her voting in the Japanese po-

litical elections of April 10, 1946, and that the Certificate as to plaintiff Blanche was based on her voting in such elections on April 23, 1951, April 30, 1951, July 20, 1951, October 1, 1952, and December 20, 1954; that they did so vote but only involuntarily and under pressure, duress and coercion.

Section 503 of the Nationality Act of 1940 provided that any person, within or without the United States, claiming to be a national of the United States, whose rights as such were denied by any Governmental department, agency or executive official, could institute, in the District Court of the District of Columbia or of the district in which he claimed permanent residence, an action for judgment declaring him to be a national of the United States. Such person outside the United States, upon submission of a sworn application showing good faith and substantial basis for his claim, could obtain from a United States diplomatic or consular officer a certificate of identity and be admitted to the United States pending outcome of the action.

This section was repealed by the Immigration and Nationality Act of 1952, effective December 24, 1952, 66 Stat. 166, 8 U.S.C.A. § 1101 et seq. Section 360(a) of the new act, 8 U.S.C.A. § 1503(a), authorizes, with certain exceptions, an action for declaratory judgment, under the Declaratory Judgments Act, 28 U.S. C.A. § 2201, by a person claiming citizenship who is *in the United States* and whose claim is denied. Sections 360(b) and (c) of the new act provide that such a person *not within the United States*, who at some time prior to his application for a certificate of identity has been physically present in the United States may, upon proof to the satisfaction of a diplomatic or consular officer of the United States of good faith and substantial basis of his claim, obtain from such officer a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission. If such certificate is refused, appeal may be made to the Secretary of State. Upon obtaining the certificate of identity, such person may apply at any port of entry for admission to the United States and is then subject to all of the provisions of the act relating to the conduct of proceedings involving aliens seeking admission. If he is refused admission at the port of entry, he may appeal to the Attorney General (8 U.S.C.A. § 1226(b). A final determination by the Attorney General that such person is not entitled to admission to the United States is subject to review by any court of competent jurisdiction *in habeas corpus proceedings and not otherwise.*

In establishing the new procedure as to such persons outside the United States and providing that a final exclusion by the Attorney General can be reviewed by the courts in habeas corpus proceedings and not otherwise, Congress clearly intended to take from persons in the position of plaintiffs the right to bring an action for declaratory judgment. D'Argento v. Dulles, D.C.D.C.1953, 113 F. Supp. 933. In addition to its clarity on the face of the Act of 1952, that intent was unequivocally expressed in the report of the Senate Committee on the Judiciary subcommittee which recommended the passage of the bill:

"One significant and far-reaching proposal is that which would restrict the right of a person who is denied American nationality by an agency or department of the Government from bringing a declaratory judgment to have his citizenship status determined. Under present law such a person may bring such an action whether he is within the United States or abroad. The bill restricts this privilege to those who are within the United States." (Senate Report 1515, 81st Congress, 2nd Session, p. 810).

Plaintiffs contend, however, that the "savings clause" of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1101 note), preserves to them the right to a declaratory judgment. The "savings clause" provides:

"(a) Nothing contained in this Act (this chapter), unless otherwise

specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act (this chapter) shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act (this chapter) shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes (sic), conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act (this chapter) are, unless otherwise specifically provided therein, hereby continued in force and effect * * *."

Plaintiffs are not within the holdings that the savings clause applies to actions pending at the time of the repeal of the old act, Jung Wai Mook v. Brownell, 9 Cir., 1955, 228 F.2d 412, or that it applies where plaintiff has acted affirmatively prior to the repeal, Dulles v. Richter, 1957, 101 U.S.App.D.C. 22, 246 F.2d 709, or that it applies where a governmental agency has acted affirmatively before the repeal, Mendelsohn v. Dulles, 1953, 93 U.S.App.D.C. 93, 207 F.2d 37 in each of which circumstances it was held that plaintiffs could maintain actions for declaratory judgments after the repeal.

In this case neither plaintiffs nor the government took any affirmative action until after the repeal of Section 503 of the Nationality Act of 1940. The first action taken by plaintiff, Lillian, was on November 22, 1955, and the first action taken by plaintiff, Blanche, was on March 7, 1956, when they applied to the American Consul in Fukuoka, Japan, for registration or a passport. The first action taken by a government agency was the subsequent issuance of Certificates of Loss of Nationality. Nothing referred to by the savings clause existed as to plaintiffs at the time the Act took effect except their "status," or "condition." The only such status or condition of plaintiffs, however, was their alleged citizenship, and this is not itself "affected." What alone is affected, as to plaintiffs, is the procedure by which that status or condition is to be determined, and that change is clearly "specifically provided." Such provision is within the power of Congress. Barber v. Yanish, 9 Cir., 1952, 196 F.2d 53; Matsuo v. Dulles, D.C.S.D.Cal.1955, 133 F. Supp. 711.

Judicial review of this nature, and at this stage of the administrative proceedings being thus expressly precluded by section 360 of the Immigration and Naturalization Act of 1952, the Court lacks jurisdiction of the subject matter.

The motion to dismiss is granted.