MATTER OF LEE

In Deportation Proceedings

A-12575376

*Decided by Board February 12, 1965*

Respondent is ineligible for the creation of a record of lawful admission for permanent residence, pursuant to section 249, Immigration and Nationality Act, as amended, because the continuity of his residence in the United States since prior to June 28, 1940, was broken by his absence to China from April 1947 to August 1951, during which he maintained no personal property, business or financial interests in the United States and, following the death of his wife shortly after his arrival in China, remarried, went into business there and intended to remain had not the communists overrun that country.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry—Immigrant, no visa.

The case comes forward on appeal from the order of the special inquiry officer dated October 30, 1964 denying the respondent's application for adjustment of his immigration status under section 249 of the Immigration and Nationality Act, but ordering that the deportation of respondent be suspended under section 244(a)(1) of the Immigration and Nationality Act, as amended.

The record relates to a native and citizen of China, 66 years old, male, married, who last entered the United States at the port of San Francisco, California on August 24, 1951 upon presentation of a United States passport issued to him in a name other than his own. He had first entered the United States in 1922, returned to China in 1928, remained there until 1936 when he returned to the United States and again departed April 23, 1947 to China again returning the date of his last entry as set forth above. At the time of his last entry he intended to remain in the United States indefinitely and to seek employment but was not in possession of a valid immigrant visa. Deportability on the charge stated in the order to show cause has been established.

The respondent has been granted the discretionary relief of suspension of deportation pursuant to section 244(a)(1) of the Immigration and Nationality Act, as amended. The appeal, however, is from the denial of registry pursuant to section 249 of the Immigration and Nationality Act. The discretionary relief of registry is preferred because the respondent could immediately proceed to file a petition for naturalization, whereas he is required to wait for five years after the establishment of the date of lawful entry pursuant to suspension of deportation proceedings.[1]

The reason for denial of the application for adjustment of status pursuant to section 249 of the Immigration and Nationality Act is the conclusion that the respondent's absence from the United States from May 1947 to August 1951 interrupted his continuous residence from June 28, 1940 and thereby rendered him ineligible for adjustment of status pursuant to section 249 of the Immigration and Nationality Act. The respondent, however, claims continuous residence in the United States since May 13, 1936. He contends that his absence from the United States during the period from May 1947 to August 1951 did not interrupt his residence for the purpose of establishing eligibility under section 249 because he alleges that at the time he left the United States in 1947, he did not intend to give up his residence in this country but went abroad because his wife was seriously ill; that he decided to return to the United States when the communists began to invade China in 1949 but was unable to return because his adopted son was ill and because of the illness of this adopted son he remained in China until 1951. Counsel relies upon the case of *Mendelsohn v. Dulles*, 207 F.2d 37 (D.C. Cir., 1953), which held that a person who had involuntarily resided in a foreign country for more than five years due to financial inability to buy passage and because of his wife's illness did not forfeit United States nationality under section 404(c) of the Nationality Act of 1940 and section 406(c) and (e) of the Immigration and Nationality Act (8 U.S.C. 804(c), 806(c) and (e)). The court interpreted such absence as not being voluntary and equated "duress of devotion" and "coercion of marital affection" with physical restraint to render such absence involuntary.

The term "residence" is defined in section 101(a)(33) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(33)) to mean the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent.

---

[1] As argued by counsel. In fact, to accomplish this result residence must be shown from prior to 1924 (section 249).

Without stressing the higher standard of proof required in establishing a forfeiture of United States citizenship as against the standard of proof required in deportation proceedings, we believe the cases may be differentiated on factual grounds.

In a sworn statement made before an immigration officer in connection with a previous application for adjustment of status under section 249 of the Immigration and Nationality Act (which was denied by the Regional Commissioner, Southeast Region) the respondent stated that the purpose of his trip to China in 1947 and 1951 was because his wife was real sick, he had a paper business in Toishan City, China and had an idea of staying in China but when the communists came in he returned here. At that time he left no property in the United States, his wife died a month after his return to China in 1947, he married a second wife in 1947 and two children were born in May 1948 and December 1950. Not until the communists took over China in 1949 did he decide to return to the United States (Ex. B of Ex. 7, p. 10). In a subsequent sworn statement on January 9, 1962 the respondent was questioned about his residence in China from 1947 to 1951. He stated that when he left the United States in 1947 he had not made up his mind to return, that he owned no property in the United States at that time, that later on he went into business at Toishan City, Canton, China, that when the communists started invading China he decided to leave that country and come back, that his intention was to remain in China if the communists had not invaded and he would have remained there until his sons caught on to the business and then he would have come back. He stated during the four years he spent in China from 1947 to 1951 he had not maintained a residence in the United States, having sold his business when he made his trip back to China, and intended, if he came back, to look for a new business and start again. The ages of his sons, Lee Toi Kew and Lee Ben Kung, whom he stated were not his blood sons, were 20 and over 30, respectively. It may be noted that the respondent has not during previous proceedings mentioned that his continued stay in China was due to the illness of an adopted son.

It is believed that the case is governed by the decision in *Chan Wing Cheung* v. *Hamilton*, 298 F.2d 450 (1st Cir., 1962). In that case the alien, an applicant for creation of a record of lawful admission for permanent residence under section 249 of the Immigration and Nationality Act, had entered the United States before 1940 and returned to China in March 1947. In July 1947 while in Hong Kong he married and resided there in his mother's apartment with his

wife, until August 1950. During that time he and his wife had three children and during the latter part of his stay in Hong Kong he was employed. The alien contended that by various evidence relating to his continuous financial interest in the United States and the payment of rent upon his apartment here, where he left his clothing and furniture during his absence, and by an affirmative statement that he "intended to continue residence indefinitely in the United States", it could be found that he had been a continuous resident since his original entry. The court, making reference to the definition of residence in section 101(a)(33) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(33)), held that residence within that definition was not the equivalent of domicile and that it could not be found that the alien's "principal, actual dwelling place in fact" was "continuously" in the United States throughout the period 1947 to 1950 when he was living in China.

The instant case does not present as many favorable factors as were present in the *Cheung* case, *supra*. Here, the respondent admittedly gave up all his business connections in the United States, did not maintain an apartment, and did not leave any personal property or have any financial interest in this country. The illness of his wife lasted but one month. Thereafter, he remarried, went into business in China, had two children, and would have continued to reside there had not the communists overrun the country. We conclude that the respondent's "principal, actual dwelling place in fact" was not continuously in the United States during 1947 to 1951. The respondent has been granted suspension of deportation. The appeal will be dismissed.

ORDER: It is ordered that the appeal be, and the same is hereby dismissed.