Katherine M. FURCRON, et al.

v.

UNITED STATES of America, et al.

Civ. No. Y–85–4000.

United States District Court,
D. Maryland,

Jan. 17, 1986.

Deborah E. Jennings, Baltimore, Md., for plaintiffs.

Alison Kohler, Baltimore, Md., Ashby G. Hilsman, New York City, Robert L. Gordon, Washington, D.C., Catherine C. Blake, U.S. Atty., and Larry D. Adams, Asst. U.S. Atty., Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Plaintiffs Katherine and Samuel Furcron, American citizens who divide their time between Mexico and the United States, have filed this suit against the United States, the Federal Reserve Bank of New York ("FRB"), and Citibank, N.A. ("Citibank"). Plaintiffs allege that they timely tendered to the Internal Revenue Service a $10,000 cashier's check drawn on a Mexican bank in satisfaction of their 1979 tax liability. They allege that the IRS eventually sent the check to FRB New York for collection, that FRB sent the check to Citibank, and that three years later, without any prior notice to them, the IRS sent the Furcrons a "Past Due Final Notice" advising them that their payment for 1979 taxes had not been received and that, with interest and penalties, the amount due was now $16,512.39. Unable to resolve the dispute informally, the Furcrons paid another $10,000 on June 12, 1985 and filed a claim for a refund of the second payment. The IRS denied the refund on December 3, 1985.

In Count II of their complaint the Furcrons brought suit against the United States for a refund of taxes "erroneously or illegally assessed or collected" under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422. In Count I the Furcrons asserted a claim against all three defendants for negligence, and in Count III they sought indemnity from FRB and Citibank. Defendants United States and the Federal Reserve Bank of New York have filed motions to dismiss. For the purposes of resolving these motions the Court must assume that the allegations in the complaint are true.

The negligence claims against the United States must be dismissed. Title 28 U.S.C. § 2680(c) precludes the District Courts from hearing any suits for tort damages "arising in respect of the assessment or collection of any tax...." *Cleveland Chair Co. v. United States,* 526 F.2d 497 (6th Cir.1975); *Broadway Open Air Theatre v. United States,* 208 F.2d 257 (4th Cir.1953).

The United States argues that Count II of the complaint also fails to state a claim, because the plaintiffs have not alleged a valid basis for a tax refund. Title 26 U.S.C. § 6311(b)(1), entitled "Ultimate Liability," provides:

If a check or money order so received [by the Secretary pursuant to § 6311(a)] is not duly paid, the person by whom such check or money order has been tendered shall remain liable· for the payment of the tax ... and for all legal penalties and additions, to the same extent as if such check or money order had not been tendered.

The Furcrons argue that the application of § 6311 to this case would be inequitable, and seek a refund on the ground that the United States was equitably estopped from collecting the second $10,000 from them before trying to collect from FRB and Citibank first.

At least eight Circuit Courts of Appeals have held that equitable estoppel is available against the government in very limited circumstances. *See Hansen v. Harris,* 619 F.2d 942, 959 (2d Cir.1980) (Newman, J., concurring) (collecting cases), *rev'd per curiam, Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In a series of three recent decisions, the Supreme Court refused to apply the estoppel doctrine against the government on the facts of the cases before it, stating: "it is well-settled that the Government may not be estopped on the same terms as any other litigant," *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984) (footnote omitted), but refused to adopt "a flat rule that estoppel may

not in any circumstances run against the government." *Id.* at 60, 104 S.Ct. at 2224. Two separate opinions by members of the court warned that the resolutions of those cases "[give] an impression of hospitality towards claims of estoppel against the government which our decided cases simply do not warrant," *Heckler v. Community Health Services, supra,* 467 U.S. at 68, 104 S.Ct. at 2228 (Rehnquist, J., concurring in judgment), and "[provide] inadequate guidance to the lower courts...." *Schweiker v. Hansen, supra,* 450 U.S. at 792, 101 S.Ct. at 1473 (Marshall, J., dissenting).

■ With those warnings ringing in its ears, this Court feels constrained to follow the considerable precedent allowing estoppel claims against the government, at least until the Supreme Court clearly holds to the contrary. The Court notes that the Fourth Circuit appeared to apply principles of equitable estoppel in the case of *Tuck v. Finch,* 430 F.2d 1075 (4th Cir.1970), *but see Hansen v. Harris, supra,* 619 F.2d at 954, n. 4. (Friendly, J., concurring), and did not suggest that estoppel was unavilable against the government in *West Augusta Development Corp. v. Giuffrida,* 717 F.2d 139, 140 (4th Cir.1983).

Allowing for the abstract possibility that estoppel may apply against the government is one thing; determining what principles to apply in evaluating specific government estoppel claims is another. The Court will review the last three Supreme Court decisions on the subject for guidance.

In *Schweiker v. Hansen, supra,* the plaintiff had become eligible for benefits as a divorced mother when certain Social Security amendments took effect on January 1, 1973. On June 12, 1974, the plaintiff met with a Social Security Field Representative to inquire about benefits. The representative told her she was ineligible. He also failed to advise her to file a written application, in violation of internal department procedures.

The statute and its implementing regulations allowed for retroactive benefits up to twelve months before the submission of a

written application, and plaintiff sought retroactive benefits for the twelve-month period prior to her oral interview. The Second Circuit held that the government was estopped from asserting the defense that plaintiff had not filed a written application. Judge Friendly wrote a vigorous dissent, emphasizing the potential for numerous claims, fraudulent or legitimate, based on representations of similar misadvice by a government employee. Judge Friendly noted the potential costs of adjudicating those claims, and wrote that the Second Circuit's opinion departed from a

> solid and well-articulated body of doctrine that funds contributed by all citizens, with definite limitations upon their use, are not to be diverted to a person not within these limitations simply because the Federal Government has not been able to secure perfect performance from its hundreds of thousands of employees scattered throughout the continent.

*Hansen v. Harris, supra,* 619 F.2d at 954.

In a summary, *per curiam reversal,* the Supreme Court agreed with Judge Friendly's dissent. *Schweiker v. Hansen, supra,* 450 U.S. at 788, 101 S.Ct. at 1470–71. The Court held that the oral misrepresentations to plaintiff did not rise to the "affirmative misconduct" necessary to estop the government from enforcing "the conditions defined by Congress for charging the public treasury." 450 U.S. at 788, 101 S.Ct. at 1471, *quoting Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). In a footnote, the Court distinguished several lower court decisions that applied estoppel against the government on the ground that in those cases "estoppel did not threaten the public fisc as estoppel does here." 450 U.S. at 788–89, n. 4, 101 S.Ct. at 1471, n. 4 (citations omitted).

In *INS v. Miranda,* 459 U.S. 14, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982) (*per curiam*), the plaintiff, a citizen of the Philippines, married an American citizen. His American wife filed a visa petition on plaintiff's behalf. Plaintiff simultaneously filed an ap-

plication requesting the INS to upgrade his status to permanent resident alien, which status was dependant on the availability of a visa. The INS did not process either application for 18 months. In the meantime, plaintiff's marriage broke up, and his wife withdrew the visa application on his behalf. The INS finally denied plaintiff's request for an upgrade in status because he did not have a visa, and ordered him to show cause why he should not be deported.

The Ninth Circuit held that the 18-month delay was "affirmative misconduct" by the INS, and estopped the government from denying plaintiff's request for an upgrade in status. *Miranda v. INS*, 673 F.2d 1105 (9th Cir.1982) (*per curiam*). The Supreme Court reversed, holding that the delay did not constitute "affirmative misconduct." 459 U.S. at 18, 103 S.Ct. at 283. The estoppel issue had been raised for the first time on appeal, preventing full factual development of the reason for the delay, and the Court wrote "we cannot say in the absence of evidence to the contrary that the delay was unwarranted." *Id.* The Court also held that a threat to the public fisc was not a precondition for overturning an estoppel claim against the government, and noted the "increasingly important interest, implicating matters of broad public concern," in enforcing the immigration laws. 459 U.S. at 19, 101 S.Ct. at 284.

In *Heckler v. Community Health Services of Crawford County, supra*, a nonprofit health care provider had received a double disbursement of funds under Medicare and the Comprehensive Employment and Training Act ("CETA"). In filing claims for the double disbursement, the defendant had relied on the mistaken advice of a fiscal intermediary that had contracted with HHS to assume certain administrative responsibilities. Under applicable regulations the fiscal intermediary was required to consult HHS before advising the defendant.

The Third Circuit held that the mistaken advice of the fiscal intermediary, coupled with the intermediary's failure to consult HHS, constituted "affirmative miscon-duct," and estopped the government from recouping the double disbursements. The Supreme Court reversed without deciding whether the intermediary's conduct constituted "affirmative misconduct." The Court held that the defendant had not suffered a detrimental change of position because it had not been entitled to the money in the first place. 467 U.S. at 61–62, 104 S.Ct. at 2224–25. The Court also held that the defendant, an experienced health care organization, was not justified in relying on the intermediary's bad advice because it had an independent duty to familiarize itself with the applicable regulations. *Id.* Thus, the Court concluded, defendant had not demonstrated "that the traditional elements of an estoppel [were] present." *Id.*

■ From these cases, this Court draws several tentative principles. An estoppel claim against the government must make out the traditional elements of estoppel:

> If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does act ... the first person is not entitled ...
>
> (b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired.

*Heckler v. Community Health Services, supra*, 467 U.S. at 59, 104 S.Ct. at 2223, *quoting* Restatement (Second) of Torts § 894(1) (1977) (footnote omitted). The government's acts or misrepresentations inducing reliance must be "affirmative misconduct," must be more than a mistake by an individual government employee. And applying the estoppel must not threaten the public fisc or upset public policy if extended to like cases.

■ Under those principles, plaintiffs have alleged sufficient facts to survive a motion to dismiss. In order to prevail plaintiffs must demonstrate that the

government's failures to tender the check promptly for payment, to oversee on the collection efforts of FRB and Citibank, and to notify the plaintiffs that their check had been lost were the result of lax IRS practices, not the mistakes of an individual employee. In the alternative, plaintiffs must demonstrate that the decision to dun them a second time was the result of unjust IRS policies, not individual caprice. Such showings might constitute "affirmative misconduct."

Plaintiffs must also demonstrate that they changed their position in reliance upon the government's inaction. They must show that they might have been able to trace the check themselves, or pursue some remedy against the bank, had they been seasonably notified of the IRS' collection difficulties. Plaintiffs must also demonstrate that they were irrevocably harmed by the government's conduct. That showing will depend upon the resolution of plaintiff's claims against the other defendants. They must also show that applying estoppel to cases such as theirs will not threaten the the public fisc or upset public policy.

■ Defendant Federal Reserve Bank of New York has filed a motion to dismiss, arguing that this Court does not have jurisdiction over it. Recognizing the serious jurisdictional difficulties with haling FRB into court in Maryland, the plaintiffs have moved this Court to transfer venue of their suit against FRB to the Southern District of New York. Plaintiffs' motion for a change of venue will be granted, pursuant to 28 U.S.C. § 1406.