**Fanie Phily Mateo ANGELES**

v.

**DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE.**

Civ. No. B–89–2093.

United States District Court,
D. Maryland.

Jan. 25, 1990.

David Carliner, Washington, D.C., for petitioner.

George W. Maugans, and Robert S. Finkelstein, Baltimore, Md., for respondent.

WALTER E. BLACK, Jr., District Judge.

Pending before the Court is a petition for writ of habeas corpus filed by Fanie Phily Mateo Angeles pursuant to 8 U.S.C. § 1105a(b), seeking judicial review of a decision by the Board of Immigration Appeals affirming a final order of exclusion by an Immigration Judge in Seattle, Washington.

The basic facts of the case are not disputed. Petitioner recounted these facts at her exclusion hearing, and the Immigration Judge found her to be truthful and candid. Petitioner, a single female in her late fifties, is a native and citizen of the Republic of the Philippines. She was employed as an accountant in the Philippines until 1974 when she quit her job to take care of her ill mother. Petitioner entered the United States as a lawful permanent resident alien on September 11, 1976, and, thereafter, was issued an alien registration receipt card reflecting her status as a permanent resident. Petitioner lived in a family home with her unmarried sister in Germantown, Maryland, for a little over a month and then returned to the Philippines out of a family obligation to resume care of her aged and ill parents. Her mother suffered from many illnesses and died in 1982. After her mother's death, petitioner remained in the Philippines to care for her father who was depressed and unwilling to move to the United States because he wished to be near his wife's grave. Petitioner did not want to lose her permanent status in the United States; consequently, each year she would spend one to two months in the family home in Germantown, Maryland, before returning to the Philippines. Every time she left from or arrived in the United States, she would ask a U.S. Immigration officer if her alien registration receipt card was valid for admission to the United States. Each time, the Immigration officers advised her that if she did not stay a year or more outside the United States, she could always return here. In addition, along with her alien registration receipt card, petitioner received a "Welcome to the United States of America" brochure, which set forth similar advice about use of the card for reentry. However, when petitioner attempted to reenter the United States at Seattle, Washington, on August 3, 1985, she was detained by the Immigration and Naturalization Service (hereinafter "INS") and placed in exclusion proceedings pursuant to Section 212(a)(20) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(20), for lack of a valid entry document.

Petitioner stated that she has intended to live permanently in the United States from the date she first came here in 1976 continuously up to the present time. At the time of the exclusion hearing, petitioner had five siblings living in the United States, four as U.S. citizens and one as a lawful permanent resident, and she also had several members of her extended family here. In 1985, only her father, in his late eighties, still remained in the Philippines. Petitioner has maintained a bank account at the Chevy Chase Savings and Loan since 1976 when she deposited more than $1,000 in the account. While only her unmarried sister's name is on the deed of the Germantown house, it is considered to be the family home.

At the exclusion hearing on August 13, 1985, petitioner requested a change of venue to Baltimore on the ground that her residence was in Maryland, and she needed the hearing to be held there so that she could have access to various forms of testimonial and documentary evidence. The request for change of venue was denied on the ground that the Immigration Court did not have jurisdiction to grant a venue change where plaintiff was in INS custody. Petitioner's motion for a continuance was also denied; however, the Immigration Judge accepted as true petitioner's proffer

as to the testimony of her three sisters. While finding petitioner candid and truthful and finding that her devotion to her parents was noble, the Immigration Judge held that she had not established a residence in the United States as residence is defined in section 101(a)(33) of the Act but, rather, had been a continuous resident of the Philippines for all her life. Therefore, the Judge found that petitioner was not a lawful permanent resident of the United States in 1985 and that her alien registration receipt card was not sufficient for her admission to the United States. The Judge also found that petitioner was not returning to the United States from a temporary absence abroad. For both of these reasons, the Immigration Judge concluded that petitioner was excludable under the provisions of Section 212(a)(20) of the Act.

In a decision dated May 26, 1989, the Board of Immigration Appeals (hereinafter "BIA") affirmed the Immigration Court's ruling and dismissed petitioner's appeal. The BIA found by clear, unequivocal, and convincing evidence that petitioner was excludable because her absences from the United States were not temporary in nature, she never actually established a permanent residence in this country, and she had abandoned her lawful permanent resident status. Like the Immigration Judge, BIA did not question that petitioner had always intended, and still intends, to make the United States her home. BIA found, however, that petitioner's intentions did not by themselves resolve the question of whether she was returning from a "temporary visit abroad," and that her actions of spending 10 to 11 months in the Philippines for each year since 1976 did not support her intentions.

■ In exclusion cases such as this, where the returning alien had a colorable claim to permanent resident status, the burden of proof was on the INS to show by "clear, unequivocal, and convincing evidence" that the alien's lawful permanent resident status had changed or that she had abandoned that status. *Matter of Huang,* Interim Decision 3079 (BIA 1988); *see also Woodby v. Immigration and Nat-*

*uralization Service,* 385 U.S. 276, 286, 87 S.Ct. 483, 488, 17 L.Ed.2d 362 (1966) (clear, unequivocal, and convincing standard applies to deportation cases involving resident aliens). Under the applicable standard of review, this Court must affirm the decision below if there has been no error in law and if the factual findings are supported by reasonable, substantial, and probative evidence in the record considered as a whole. 8 U.S.C. § 1105a(a)(4); *see Chavez–Ramirez v. Immigration and Naturalization Service,* 792 F.2d 932, 934 (9th Cir. 1986).

Upon review of the entire record, the Court finds that the Board of Immigration Appeals' decision affirming the Immigration Judge's exclusion and deportation order correctly applied the law and was supported by reasonable, substantial, and probative evidence in the record considered as a whole.

The Court finds no pleasure in reaching this decision, and, indeed, is very sympathetic to petitioner's situation. The Court finds admirable petitioner's long-standing devotion to caring for her parents, for which she has made great sacrifices, including being away from her siblings and extended family and the likelihood now of being deported to the Philippines. The Court also has no doubt that petitioner has been and would be an upstanding and contributing member of this society. However, this Court is not an equity court and is bound to apply the governing law in this case.

Section 212(a)(20), 8 U.S.C. § 1182(a)(20), provides in relevant part that any immigrant applying for admission to the United States without a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document shall be excluded from admission into the United States. 8 U.S.C. § 1181(b) states that an immigrant lawfully admitted for permanent residence, who is returning from a temporary visit abroad, may be readmitted to the United States without a passport, immigrant visa, reentry permit or other normal documentation. An INS regulation further provides in relevant part

that an alien registration receipt card may be presented in lieu of an immigrant visa by an immigrant alien who is returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad not exceeding one year. 8 C.F.R. § 211.1(b)(1)(A). The Immigration Judge found that petitioner was never a resident of the United States and, therefore, did not have lawful permanent resident status when she applied for admission to the United States in 1985. The Immigration Judge also found that petitioner was not returning from a temporary absence abroad. The Board of Immigration Appeals affirmed the Immigration Judge on both rationales for exclusion under Section 212(a)(20).

■ The Court finds there is substantial evidence in the record as a whole to support these findings. Petitioner returned to the Philippines less than two months after acquiring permanent resident status in 1976 and stayed in the Philippines for 10 to 11 months each year thereafter until she was detained in 1985. She returned to the United States each year for one to two months seeking to retain her permanent resident status. Petitioner's desire to retain her status, without more, is not sufficient. *Matter of Kane*, 15 I & N Dec. 258 (BIA 1975). The INS regulation states that an alien registration receipt card may be used to gain admission to the United States if the immigrant alien is returning to an unrelinquished lawful permanent residence in the United States after a temporary absence abroad not exceeding one year. There is substantial evidence in the record as a whole to support findings that petitioner had relinquished her lawful permanent residence and that her extended trips to the Philippines were not temporary absences abroad.

■ The status of being "lawfully admitted for permanent residence" carries with it certain privileges—a privilege to remain in the United States indefinitely, a privilege to work in the United States, a privilege to reside permanently in the United States if one chooses, and a privilege to make temporary visits abroad. *Alvarez v. District Director of the U.S. Immigration and Naturalization Service*, 539 F.2d 1220, 1224 (9th Cir.1976), *cert. denied*, 430 U.S. 918, 97 S.Ct. 1334, 51 L.Ed.2d 597 (1977). From 1976 to 1985, petitioner chose not to remain in the United States, not to work in the United States, not to reside permanently in the United States, and to take extended visits abroad to the Philippines. Petitioner cannot both reside in the Philippines and have her trips to the Philippines considered temporary visits abroad. *Alvarez*, 539 F.2d at 1224. In order to exercise the privilege of leaving temporarily, an alien must have a United States residence on return. If an alien chooses not to have a permanent residence in the United States, she cannot leave temporarily and reenter as a special immigrant under 8 U.S.C. § 1181(b) and 8 C.F.R. § 211.1(b)(1)(A). *Id.* Residence is defined at Section 101(a)(33) of the Act as a person's principal place of abode, her actual dwelling place in fact, without regard to intent. Permanent is defined at Section 101(a)(31), 8 U.S.C. § 1101(a)(31), as a relationship of continuing or lasting nature, as distinguished from temporary. There is substantial evidence supporting the finding that petitioner resided permanently in the Philippines the entire period from 1976 to 1985 and not in the United States.

■ There is also substantial evidence to support the finding that petitioner's trip to the Philippines did not constitute a temporary absence abroad. A permanent resident returns from a temporary visit abroad only when (a) her visit is for "a period relatively short, fixed by some early event," or (b) her visit will terminate upon the occurrence of an event having a reasonable possibility of occurring within a relatively short period of time. *Chavez–Ramirez*, 792 F.2d at 936–937 (citations omitted). There is substantial evidence to find that petitioner's visits to the Philippines were not fixed by some early event and would not terminate upon the occurrence of an event having a reasonable possibility of occurring within a relatively short period of time. There is substantial evidence indicating that petitioner's visits to the Philippines

beginning in 1976 were indefinite in terms of time frame. Petitioner's visits did not terminate upon her mother's death, and there is substantial evidence that her visits would not have terminated until her father passed away or chose to and could lawfully emigrate to the United States. The Act does not contemplate that an alien immigrant shall be afforded the opportunity to establish a permanent residence in this country at some indefinite time in the possibly distant future.

■ In a related argument, petitioner asserts that she should not have been excluded for her visits to the Philippines because these visits were involuntary. *See Mendelsohn v. Dulles*, 207 F.2d 37 (D.C.Cir.1953). In particular, petitioner alleges that her visits were involuntary because of her parents' ages and illnesses and because of family and cultural traditions obligating her to take care of her parents. In *Mendelsohn*, the court held that a naturalized national of the United States did not fall within a statute providing for forfeiture of nationality for voluntary foreign residence exceeding five years because his financial inability to purchase passage and his alien wife's illness, which prevented her from traveling, rendered his continued residence in Palestine involuntary. Assuming that a voluntariness requirement applies to the case at bar, the Court finds the current case factually distinguishable. Petitioner went back and forth between the Philippines and the United States for nine years. Her argument that the visits to the Philippines were involuntary is negated (1) by the fact that her family responsibilities began in 1974 when she left employment to care for her parents full time and yet did not prevent her from leaving the Philippines to seek permanent residence here; (2) by her assertion that she probably would not have gone to the Philippines if she had known that she would lose her permanent resident status; and (3) by her statements at the exclusion hearing in 1985 that she intended then to stay permanently in the United States, despite the need to care for her father back in the Philippines, because she had to comply with United States regulations. Thus, the Court finds that for filial and cultural reasons, petitioner chose to resume care of her parents from 1976 through her detention in 1985 and her visits were not involuntary.

■ Petitioner asserts that the Immigration Judge's denial of her motion to change venue at the exclusion hearing deprived her of a fair opportunity to obtain evidence material to her claim for readmission to the United States as a lawful returning permanent resident and was a denial of her right to due process. Under regulations in effect at the time of the hearing, the Immigration Court had no jurisdiction to grant a motion to change venue where petitioner was being detained in INS custody, *see Matter of Alphonse*, 18 I & N Dec. 178 (BIA 1981), and for that reason denied petitioner's motion. Petitioner argues persuasively that she was improperly detained in custody by the INS. The record before the Court indicates that the INS wrongfully detained petitioner under 8 C.F.R. § 235.3(b) and most likely would not have been able to detain her under § 235.3(c). Petitioner further argues that if she had not been in INS custody, the Immigration Judge would have or should have granted a change of venue. While the Court recognizes the injustice to petitioner of her probable wrongful detention by the INS, the Court finds that petitioner suffered no prejudice by the denial of change of venue and was not deprived of due process under the law. The Immigration Judge allowed a week's postponement of the hearing at the request of counsel for petitioner in order to seek a bond, parole, or change of venue from the INS; allowed petitioner's counsel, David Carliner, to participate in the hearing by telephone while her co-counsel Dan P. Danilov conducted the questioning at the hearing; admitted into evidence a proffer of the testimony that would have been given by the petitioner's sisters had they attended the hearing, and accepted that proffered testimony as true; and accepted all of petitioner's testimony and evidence as truthful. At the exclusion hearing, petitioner's counsel conceded that the actual testimony of her sisters would not be needed if the proffer of their testimony were

accepted as evidence for the purposes of determining admissability. Thus, even if petitioner could have or should have been granted a change of venue, the Court finds any such error to be harmless, of no prejudice to petitioner, and no denial of due process. *See United States v. Calderon–Medina,* 591 F.2d 529, 531–32 (9th Cir. 1979).

Finally, petitioner asserts that the government should be estopped from excluding and deporting her because every time she left or returned to the United States, Immigration officers wrongfully told her that as long as she did not remain outside the United States for a period of more than one year, her permanent resident status would remain valid and because the "Welcome to the United States of America" brochure she received with her alien registration card set forth the same advice. The law of estoppel against the government is very narrow and can lead to harsh results. An estoppel claim against the government must make out the traditional elements of estoppel, must show affirmative misconduct going beyond mere negligence or mistake by an individual government employee, and must not threaten the public fisc or public policy. *Mukherjee v. Immigration and Naturalization Service,* 793 F.2d 1006, 1008–09 (9th Cir.1986); *Furcron v. United States,* 626 F.Supp. 320, 323 (D.Md.1986). Petitioner has failed to show any affirmative misconduct beyond mere negligence or mistake by individual government employees and, thus, cannot claim estoppel against the government. Incorrect advice or oral misrepresentations do not rise to the level of affirmative misconduct. *See Montana v. Kennedy,* 366 U.S. 308, 314–15, 81 S.Ct. 1336, 1340–41, 6 L.Ed.2d 313 (1961); *Mukherjee,* 793 F.2d at 1009. In addition, the record does not indicate that the officers knew all the material facts pertaining to petitioner's circumstances, which is an essential common law element in the estoppel doctrine. *See District 17, District 29, Local Union 7113, and Local Union 6023, United Mine Workers of America v. Allied Corp.,* 735 F.2d 121, 129 (4th Cir.1984), *different result reached on other grounds,* 765 F.2d 412 (4th Cir.) (en banc), *cert. denied,* 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985).

For all the foregoing reasons, the decisions below are affirmed, and the Court will enter a formal order in accordance with this opinion denying the petition for writ of habeas corpus.