Catalino C. SANTOS, Petitioner,

v.

UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 23160.

United States Court of Appeals,
Ninth Circuit.

Feb. 13, 1970.

Norman Stiller (argued), of Faulkner, Sheehan & Wiseman, San Francisco, Cal., for appellant.

David R. Urdan (argued), Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., San Francisco, Cal., Stephen M. Suffin, Atty., I. N. S., San Francisco, Cal., John N. Mitchell, Atty. Gen. of the U. S., Washington, D. C., for appellee.

Before MADDEN *, Judge of the United States Court of Claims; MERRILL and BROWNING, Circuit Judges.

J. WARREN MADDEN, Judge:

The petitioner, Santos, seeks review by this court of the Final Order of the Respondent Service, hereinafter called the Service, that the petitioner be deported. The order was entered pursuant to Section 242(b) of the Immigration and Nationality Act, 8 U.S.C. § 1252(b), hereinafter referred to as the Act. Section 106 of the Act, 8 U.S.C. § 1105a gives this court jurisdiction to review that order.

The petitioner is a citizen of the Philippines. From 1947 to July 1959 he worked on the Island of Guam. He had the status of a permanent resident of Guam, pursuant to 8 C.F.R., 4.2(J).[1] He left Guam in July 1959, to become a cook-steward for a shipping company, and for fourteen months sailed in that capacity among the Pacific Islands. During this period he twice landed on Guam. In 1960 he landed in the Philippines, and visited his wife and children there, while awaiting further sailing orders from his former employer company. Such orders never came, so he inquired about other employment that would return him to Guam. In the summer of

---

* Senior Judge, United States Court of Claims, sitting by designation.

1. The cited Regulation confers the status of permanent residents on certain aliens admitted to Guam before December 24, 1952.

1961 he contacted the American Consul in Manila who advised him to return to Guam to establish his right to permanent residence. In March, 1962, he went to New Guinea to work as a cook in a lumber camp, and stayed there until September 1963, when he returned to the Philippines from some three months. He obtained work as a cook for a ship company and sailed on various ships which called at Guam in 1964, 1965 and 1967. On September 10, 1967, the ship on which he was then employed called at San Francisco, California, and Santos went ashore there as a crewman purportedly for the purpose of being discharged from his vessel and repatriated to the Philippines. He remained ashore longer than he was authorized to do, and the Service, on September 14, 1967, issued an order requiring him to show cause why he should not be deported as an immigrant crewman who had remained in the United States longer than the law allowed.

Hearings in the show-cause proceeding were held before a Special Inquiry Officer of the Service, on October 25, 1967, and February 13, 1968. Santos' response to the show-cause order was that he had, as we have seen above, been a permanent resident of the United States and that he had entered the United States at San Francisco on September 10, 1967, not as an alien crewman, but as a permanent alien resident returning from a temporary visit abroad, as authorized by Section 101(a) (27) (B) of the Act, 8 U.S.C., § 1101(a) (27) (B).[2] He applied for waiver of the documentation required of returning resident aliens.[3] The Special Inquiry Officer, after the two days of hearings, decided that Santos was not, when he land-

ed at San Francisco on September. 10, 1967, "returning from a temporary visit abroad." That conclusion of course disposed of the petitioner's contention that he was entitled in the discretion of the Attorney General to readmission "without being required to obtain a passport, immigrant visa, re-entry permit or other documentation". But, principally, it denied that he was entitled to enter the United States at all in the status of a permanent alien resident returning from a temporary visit abroad.

The Special Inquiry Officer in his written decision filed April 30, 1968, after narrating the pertinent events in the petitioner's history from 1947 down to date said:

> The respondent has actually not lived in Guam since his voluntary departure in 1959. His wife and children have always lived in the Philippines and when he has not been working elsewhere, he has lived with them. Under the circumstances I am unable to find that when he last entered the United States he was "returning from a temporary visit abroad" I conclude, therefore, that he is not eligible for a waiver of the immigrant visa requirement.

On July 24, 1968, the Board of Immigration Appeals dismissed the appeal which the petitioner had filed with it, seeking to have the Board review and reverse the decision of the Special Inquiry Officer. The Board said that Santos' "actual place of residence since 1959, for the past nine years, has been in the Philippines with his wife and children when he was not employed elsewhere".

2. The cited Section defines a "returning resident alien" as "an immigrant lawfully admitted for permanent residence, who is returning from a temporary visit abroad."

3. Section 211(b) of the Act, 8 U.S.C., § 1181(b) provides:
"Notwithstanding the provisions of Section 212(a) (20) of this Act in such cases or in such classes of cases and under such conditions as may be by regulations prescribed, returning resident immigrants, defined in Section 101(a) (27) (B), who are otherwise admissible may be readmitted to the United States by the Attorney General in his discretion without being required to obtain a passport, immigrant visa, re entry permit or other documentation".

The Special Inquiry Officer and the Board were confronted with the question whether Santos, when he landed at San Francisco in 1967, was a person who had had the status of an alien admitted to the United States (Guam) for permanent residence, had retained that status from the time, 1947, when he acquired it, and was, in the year 1967, returning with that status "from a temporary visit abroad". If, having that status in 1959, after 12 years in Guam, he had left Guam with the intention of returning to the Philippines, the country of his birth and his citizenship, and remaining there, he would have lost his status as a permanent alien resident of the United States (Guam). In fact he left Guam in 1959, voluntarily, because he was offered what he regarded as a better job elsewhere. He retained no ties in Guam. During his twelve years there he had lived and slept in an "area" in a workmen's barracks, large enough for a bed and a footlocker, with the necessarily appurtenant privileges to move around the premises. When he took the footlocker with him, nothing was left on Guam. His wife, a resident of the Philippines, had visited him for four months early in his years on Guam but was unwilling to live there or bring their children there. When Santos, after twelve years of satisfactory service on Guam, left the island to take a job as a cook-steward for Pacific Micronesian Lines, which sailed among the Pacific Islands, he left nothing behind him on Guam, by way of property, family connection, or other link. The fact that the ship or ships on which he sailed for his new employer were American Flag ships, indicated no continuing connection with Guam. His ships called at Guam only twice in the fourteen months during which he was employed by that line. The Special Inquiry Officer and the Board could reasonably have found that when he left Guam in 1959 "he left with no definite intention, either of staying (away) permanently or of returning, merely planning to let future events determine his course" in which situation the Circuit Court of Appeals for the Third Circuit held in United States ex rel. Alther v. McCandless, 46 F.2d 288, 290, that his status as an alien with permanent residence would have been interrupted, and his absence from Guam would not have been a temporary visit. As to any connection which his sailing on an American Flag ship might have preserved for him, Santos' case is far different from that of Ting.[4] Ting's home port was San Francisco, which port he had entered 33 times in 9 years as a non-immigrant crewman, always staying, when in port, at 848 Kearny Street, San Francisco. Ting was held by the Board to have had "continuous residence" in the United States, and, when he was injured on a voyage to Japan, and returned, after hospitalization and recovery in Japan, as a passenger on a ship, he was entitled to re-enter the United States for permanent residence.

After fourteen months with Pacific Micronesian Lines, Santos visited his family in the Philippines, while awaiting further sailing orders. The sailing orders never came. In 1961 he went, from his native area in the Philippines, where he had been living with his wife and children, to Manila, where he consulted the United States Consul who advised him to return to Guam to establish his right to permanent residence there. He did not do that, but took a job in New Guinea where he worked for more than a year.

When Santos left Guam in 1959 he, as we have said above, retained no ties with Guam either tangible or mental. There is no evidence that he left, with an *animus revertendi*. So far as appears, his thoughts about Guam, which he claims to have entertained later, were the normal thoughts of a working man who, having for some years, had a good job with a considerate employer, leaves it to take work elsewhere, works in vari-

---

4. Matter of Ting, In Deportation Proceedings, A–9801237, Decided by the Board, September 30, 1966.

ous places at a variety of jobs and finds none of these as satisfactory as the one which he had held for a long time, and had left. He wishes that he could get his old job back, or could at least find work in that general location. But that sentiment does not mean that he never left the old job, or the country in which he had it. It only means that he wishes he had not left it.

The Special Inquiry Officer and the Board of Immigration Appeals had for decision the question of whether Santos was an alien who had the status of a permanent resident of the United States who, when he landed at San Francisco on September 10, 1967, was returning from a temporary visit abroad. The Special Inquiry Officer and the Board found that Santos did not fulfill those requirements. Their findings were based upon reasonable, substantial and probative evidence. 8 U.S.C., Section 1105a(4).

The petition for review is dismissed.