Maria Teresa GUARDIA;  Paul Guardia;  Franz Luxen Guardia;  Skarlen Susy Guardia, Petitioners,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 00–70388.
I & NS Nos. A38–612–288 A38–612–292 A38–612–291 A38–612–290.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 9, 2001.*

Decided Oct. 12, 2001.

Before BRUNETTI, RYMER and WARDLAW, Circuit Judges.

### MEMORANDUM **

Maria Teresa, Paul, Franz and Skarlen Guardia, citizens of Bolivia, petition for review of the final order of deportation entered by the Board of Immigration Appeals (BIA), affirming the determination of excludability under the Immigration and Nationality Act (INA) § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I) for lack of immigrant visas.  We deny the petition for review.

The Guardias argue that Maria Teresa did not abandon her lawful permanent resident status when she left the United States to go to Bolivia in 1985.  However, substantial evidence supports the BIA's determination to the contrary.  *Chavez–Ramirez v. INS,* 792 F.2d 932, 934–35, 937 (9th Cir.1986).  Guardia and her three children lived with her brother while in the United States; she had no real property,

---

* The panel unanimously finds this case suitable for decision without oral argument.  Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

never rented an apartment, worked for only a few days, and was supported by her brother. When she returned to Bolivia in March of 1985 with her youngest child to tend to her ailing father-in-law, the bank account she had opened here with a minimum deposit given to her by her brother was allowed to lapse. After her father-in-law's death, she continued to stay in Bolivia, living with her husband, for a one year period of mourning and three years beyond that. Franz and Skarlen joined the family in Bolivia and were enrolled in Bolivian schools. Guardia made no effort to inquire about her lawful permanent resident status or to apply for reentry during this period, and explained that she did not try to return because her husband did not want her to leave yet and the national currency was weak. In these circumstances, a reasonable factfinder is not compelled to find that she had a "continuous, uninterrupted intention to return to the United States." *Id.* at 937. Even if she intended to return to the United States some day, "[t]he relevant intent is not the intent to return ultimately, but the intent to return to the United States within a relatively short period." *Singh v. Reno,* 113 F.3d 1512, 1514 (9th Cir.1997). Accordingly, Maria Teresa could not reclaim her lawful permanent resident status when she and her children attempted to reenter the United States in December of 1990.

Maria Teresa's abandonment of her lawful permanent resident status is imputed to her children, who were unemancipated minors in this entire period through 1990. *See In re Zamora,* 17 I & N Dec. 395 (BIA 1980); *In re Favela,* 16 I & N Dec. 753 (BIA 1979); *In re Winkens,* 15 I & N Dec. 451 (BIA 1975). *In re Bauer,* 10 I & N Dec. 304 (BIA 1963), is not to the contrary; it was expressly overruled in this regard by *Zamora.* It makes no difference that

Paul accompanied his mother back to Bolivia while Franz and Skarlen left later.

The Guardias mention new information that Franz, Skarlen and Paul suffered abuse by their father, but we cannot consider information that was not submitted to the Board and is not part of the administrative record. *Fisher v. INS,* 79 F.3d 955, 963 (9th Cir.1996).

Finally, the Guardias argue that Skarlen and Paul's due process rights were violated because the IJ allowed only Franz to testify. We disagree, because only their mother's intent was relevant.

PETITION FOR REVIEW DENIED.