**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

**FILED**

FOR THE NINTH CIRCUIT

JUL 25 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROSA MARIA PORTILLO-ESCOBAR, | No. 07-71998 |
| Petitioner, | Agency No. A046-412-551 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 8, 2011
Pasadena, California

Before: B. FLETCHER and N.R. SMITH, Circuit Judges, and BREWSTER, District Judge.[**]

Rosa Maria Portillo-Escobar, a citizen of El Salvador, petitions for review of

the Board of Immigration Appeals' ("BIA") decision that she abandoned her

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Rudi M. Brewster, Senior District Judge for the U.S. District Court for Southern California, San Diego, sitting by designation.

lawful permanent resident (LPR) status in the United States. We have jurisdiction

pursuant to 8 U.S.C. § 1252. We deny the petition.

Whether a permanent resident abandoned her LPR status is reviewed under

the substantial evidence standard. *Khodagholian v. Ashcroft*, 335 F.3d 1003, 1006

(9th Cir. 2003) (citing *Chavez-Ramirez v. INS*, 792 F.2d 932, 934–35 (9th Cir.

1986)). "To reverse under the substantial evidence standard, the evidence must be

so compelling that no reasonable factfinder could fail to find the facts were as the

alien alleged." *Khodagholian*, 335 F.3d at 1006 (citing *Singh v. Reno*, 113 F.3d

1512, 1514 (9th Cir. 1997) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 483

(1992))).

"When an applicant has a colorable claim to returning resident status, as

[Portillo-Escobar] does, the INS has the burden of proving [she] is not eligible for

admission to the United States." *Singh*, 113 F.3d at 1514. That burden "is to

establish by clear, unequivocal, and convincing evidence that [Portillo-Escobar's]

status has changed." *Id*. (citing *Woodby v. INS*, 385 U.S. 276, 277 (1966)).[1]

_____

[1]The Government argues that *Woodby*'s "clear, unequivocal, and convincing evidence" standard has been replaced with a "clear and convincing" standard. The BIA applied the former standard. We therefore cannot consider the government's argument. *See Navas v. INS*, 217 F.3d 646, 658 n. 16 (9th Cir. 2000) ("[T]his court cannot affirm the BIA on a ground upon which it did not rely.").

"Thus, combining our substantial evidence review with the underlying INS burden, we review for whether substantial evidence supports a finding by clear, unequivocal, and convincing evidence that [Portillo-Escobar] abandoned [her] lawful permanent residence in the United States." *Khodagholian*, 335 F.3d at 1006.

In June 2004, Portillo-Escobar sought to re-enter the United States as a returning resident alien. To qualify for such re-entry, she "must be returning to an unrelinquished lawful permanent residence after a temporary visit abroad." *Singh*, 113 F.3d at 1514 (internal quotation marks and second citation omitted).

Portillo-Escobar's last visit to El Salvador lasted about thirteen months. She contends that she went on vacation, intending to stay three to five months, but that the visit was prolonged by the unexpected death of her maternal grandfather and her need to treat the clinical depression she experienced as a result of that event. Where

> the length of the visit is contingent upon the occurrence of an event and is not fixed in time and if the event does not occur within a relatively short period of time, the visit will be considered a "temporary visit abroad" only if the alien has a continuous, uninterrupted intent to return to the United States during the entirety of [her] visit.

*Chavez-Ramirez*, 792 F.2d at 936–37 (internal citations omitted). "The relevant intent is not the intent to return ultimately, but the intent to return to the United States within a relatively short period . . . . [She] may extend [her] trip beyond that relatively short period only if [she] intends to return to the United States as soon as possible thereafter." *Singh*, 113 F.3d at 1514 (internal citation omitted).

The record does not compel the conclusion that the BIA erred in refusing to credit Portillo-Escobar's testimony that she had the intent to return to the United States within a relatively short period of time. Portillo-Escobar left for El Salvador, allegedly on vacation, after less than a month spent in the United States. That short stay followed another extended, thirteen-month stay in El Salvador. Moreover, the sudden death of Portillo-Escobar's maternal grandfather occurred five and a half months into her trip, beyond her alleged three-to-five months planned stay. Finally, the doctor who treated Portillo-Escobar for clinical depression never restricted her travel.

Portillo-Escobar's lax plans regarding her return to the United States are in stark contrast to her plans to go back to El Salvador. Although she had just spent thirteen months in El Salvador, Portillo-Escobar had upon her, on her attempt to enter the United Stated in June 2004, an airline ticket for El Salvador for less than two months later. This chronology fits within a pattern that included extended

4

stays in El Salvador and very little time spent in the United States. Thus, out of five and a half years since she received LPR status, Portillo-Escobar spent about one year in the United States and the remaining four and a half years in El Salvador.

Portillo-Escobar claims that all her absences from the United States were planned for short periods, but were extended on account of contingencies which had "a reasonable possibility of [terminating] within a relatively short period of time." *Chavez-Ramirez*, 792 F.2d at 937. We address each trip in turn.

Portillo-Escobar's first return trip to El Salvador, in April 1999, was for the purpose of caring for her paternal grandmother, who had suffered a heart attack and needed surgery. The grandmother had surgery in May 1999 and was released from the hospital after fifteen days. Portillo-Escobar ended up staying in El Salvador for sixteen months.

In another case, this court held that a six-month trip to care for terminally ill mother and for LPR's recently orphaned nephews was a contingency which had a "reasonable possibility of [terminating] within a relatively short period of time" and thus do not support a conclusion that the LPR abandoned that status. *Khodagholian*, 335 F.3d at 1006. In contrast, Portillo-Escobar's trip lasted sixteen months. Also, the record is void of evidence regarding the kind of care her

5

grandmother needed and whether that need lasted for more than a year after the surgery.  Further, Portillo-Escobar testified that she returned to the United States because her aunt needed help taking care of the children.  Thus, it appears that the length of Portillo-Escobar's stay was not determined by grandmother's health, but by Portillo-Escobar's employment opportunities in the United States.

Portillo-Escobar's second trip to El Salvador took place seven months after she returned to the United States, on March 18, 2001, after her paternal grandmother died on March 17.  She contends that she stayed longer than planned because, according to a letter from her aunt in El Salvador, she was in treatment for severe depression from March 19, 2001 to February 2002.  Portillo-Escobar testified, however, that she was treated for depression for three months.  She provided no medical records whatsoever and does not contend that the treating physician forbade her to travel.  She finally returned to the United States in February 2002, after eleven months.

Portillo-Escobar's third visit to El Salvador took place in March 2002. Portillo-Escobar went back for the anniversary of her grandmother's death.  Once there, she changed her mind and decided to stay for the country's Independence Day, which is celebrated in September.  She claims she had a return ticket for October,  but then one of her brothers had a serious accident and needed help while

6

he was recovering. In view of the fact that Portillo-Escobar returned to El Salvador after a mere month in the United States and after having spent the previous eleven months in El Salvador, her explanation that she changed her mind about the length of her stay indicates that she had no schedule for returning and was "merely planning to let future events determine [her] course." *Aleem v. Perryman*, 114 F.3d 672, 678 (7th Cir. 1997). Her brother's accident was one such event.

Portillo-Escobar's travel history paints the picture of an LPR who takes every opportunity to travel to her native country without definite plans to return and who merely returns to the Unites States in order to maintain her LPR status. *See Singh*, 113 F.3d at 1514 ("An alien's desire to retain his status as a permanent resident, without more, is not sufficient; his actions must support his professed intent."). Portillo-Escobar's limited ties to the United States confirm this conclusion. *See Chavez-Ramirez*, 792 F.2d at 937 (discussing some relevant factors).

Portillo-Escobar emphasizes that most of her family lives in the United States and that she cares for her aunt's children. The fact that Portillo-Escobar has spent so little time in the United States, and so irregularly, contradicts this latter contention. Portillo-Escobar, moreover, has never worked outside her aunt's house

7

prior to her removal proceedings; has never established a residence of her own in the United States; has never had a California driver's license or identification; has never had a bank account; has not paid any taxes prior to her removal proceedings; and had no property or significant assets in the United States. In contrast, despite becoming an LPR at twenty, Portillo-Escobar stated when interviewed at the airport in June 2004 that she has worked in her paternal grandfather's business in El Salvador, as an administrator, since she was eighteen and has continued to do so, including during her latest, thirteen-month stay in El Salvador; that she comes to the United Stated mainly for vacationing or work opportunities; and that she did not intend to live permanently in the United States and wished to relinquish voluntarily her LPR status.

Portillo-Escobar's travel history, her limited ties to the United States, and her own statements constitute substantial evidence supporting the BIA's finding by clear, unequivocal, and convincing evidence that Portillo-Escobar's latest, thirteen-month trip to El Salvador was not a "temporary visit abroad" and, therefore, that she had abandoned her LPR status in the United States.

**DENIED.**